1

2

3

4

5

6

7

8

9

10

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

11   LAWYERS FOR FAIR RECIPROCAL        Case No.:  24-cv-02175-PHX-GPC
     ADMISSION,

12                                      **ORDER GRANTING DEFENDANTS'**
                          Plaintiff,    **MOTION TO DISMISS**

13   v.

14                                      **[ECF No. 13]**
     ANN A. SCOTT TIMMER, Chief Justice

15   of the Arizona Supreme Court, and
     Justices JOHN R. LOPEZ IV, ROBERT

16   M. BRUTINEL, CLINT BOLICK,
     JAMES P. BEENE, WILLIAM G.

17   MONTGOMERY, and KATHRYN H.
     KING,

18

19                          Defendants.

20

21

22      Plaintiff brings a constitutional challenge to the Arizona Bar's reciprocal

23   admission rule, which admits experienced lawyers from states with which Arizona shares

24   reciprocity to the Arizona Bar without requiring them to take another bar examination.

25   Before the Court is Defendants' motion to dismiss Plaintiff's complaint pursuant to

26   Federal Rule of Civil Procedure 12(b)(6).  ECF No. 13.  Plaintiff Lawyer for Fair

27

28

1

1  Reciprocal Admission ("LFRA") filed an opposition and Defendants replied.  ECF Nos.

2  30, 31.  The Court finds that the matter is appropriate for decision without oral argument

3  pursuant to Local Civ. R. 7.2(f).  For the reasons below, the Court GRANTS Defendants'

4  motion to dismiss.

5                                    **BACKGROUND**

6        On August 26, 2024, Plaintiff, LFRA, filed the instant action against the Justices of

7  the Arizona Supreme Court and the District Judges of the United States District Court for

8  the District of Arizona ("Defendants").[1]  ECF No. 1 ("Compl.").

9        Plaintiff, LFRA, is a California corporation engaged in advocacy on behalf of

10  lawyers.  Compl. ¶ 2-3.   Plaintiff asserts that their members "have been deprived of their

11  citizenship rights" by the challenged Arizona state and federal attorney licensing

12  paradigms.  *Id.* ¶ 3.  Plaintiff states that their affected members include "lawyers of color,

13  women, patent lawyers, military veterans and military spouses, registered in-house

14  counsel, indigent pro bono service lawyers, federal practice specialists, and members of

15  the bar in good standing."  *Id.*  Plaintiff alleges that many of its "members and associates

16  do not want to take a second, third, and fourth entry-level competence [examination] as

17  already licensed lawyers in good standing[.]"  *Id.*

18        The complaint challenges the validity of Arizona's reciprocal rules of admission to

19  the practice of law under the Constitution and federal law.  *See generally* Compl.

20  Arizona Supreme Court Rule 34 states that an attorney may be admitted to the practice of

21  law in the Arizona by: (1) admission by Arizona uniform bar examination; (2) admission

22  on motion; or (3) admission by transfer of uniform bar examination score from another

23  jurisdiction.  Arizona R. Sup. Ct. 34(a).  An applicant may apply for admission to the

24

25

26  _____

[1] On October 25, 2024, Plaintiff dismissed the District Judges from the action without prejudice.  ECF
27  No. 19.

2

28

State of Arizona Bar on motion without taking the Arizona bar examination if they have been admitted to practice law in another jurisdiction that accepts the uniform bar examination ("UBE") and practiced law for three of the last five years in that state.[2] Ariz. R. Sup. Ct. 34(f).

Arizona Supreme Court Rules 38 and 39 provides a list of limited exceptions for the state bar admission rules.  Limited exceptions to the admission rules apply to in-house counsel, full time law professors, and approved legal service organizations and pro bono counsel, and military spouses, among others.  Ariz. R. Sup. Ct. 38(a)(c)(d) and 39(d). These exceptions involve limited or temporary admissions to practice law in Arizona without requiring attorneys to pass the UBE.  *Id.*  In addition to these exceptions, an attorney who is not a member of the State Bar of Arizona but is currently a member in good standing of the bar of another state and eligible to practice before the highest court in any state may appear as counsel *pro hac vice* in any case before any state or local court in the state of Arizona.  Arizona R. Sup. Ct. 39(a).

Plaintiff alleges that this attorney licensing scheme violates the constitutional rights of attorneys because it is based on "class" status and not on "individual" merit.  *Id.* ¶¶ 10, 12-13 (citing *Students for Fair Admissions, Inc. v. President and Fellows of Harvard Coll.*, 600 U.S. 181 (2023)).  Plaintiff alleges that Arizona Supreme Court Rule 34(f) waives the Arizona entry-level bar exam for "already licensed attorneys who have practiced law for three of the last five years from more than forty states."  *Id.* ¶ 13(ii). Plaintiff further alleges that licensed attorneys in the nine non-UBE states are not granted the same waiver of admission requirements because their states do not share reciprocity with Arizona.  *Id.* ¶ 13.

---

[2] The Court will refer to this scheme as Arizona's "reciprocal admission rule" throughout this Order.  In simple terms, Arizona shares reciprocity with other states that offer the UBE.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiff brings four claims in its Complaint: (1) violation of the Equal Protection and Privileges and/or Immunities Clauses; (2) violation of 28 U.S.C. § 1738; (3) violation of the First Amendment; and (4) violation of Fifth and Fourteenth Amendment Due Process rights.  *See generally* Compl.[3]

On September 27, 2024, Defendants filed a motion to dismiss for failure to state a claim, ECF No. 13, which has been fully briefed.  ECF No. 30.

**JUDICIAL NOTICE AND INCORPORATION BY REFERENCE**

Plaintiff attached the following documents to its opposition to the motion to dismiss: (1) several of Plaintiff's member's declarations (ECF Nos. 30-1–30-5; ECF No. 33 at 4-12) and (2) the declarants' Certificates of Good Standing in their respective states of bar admission (ECF Nos. 31-6; ECF No. 33 at 3).  *See generally* ECF No. 30. Generally, when ruling on a Rule 12(b)(6) motion, a court may only consider the complaint, its attachments, documents incorporated by reference in the complaint, and documents subject to judicial notice.  *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003).  Courts may take judicial notice of facts that are "not subject to reasonable dispute" when they (1) are "generally known within the trial court's territorial jurisdiction," or (2) "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).  While Plaintiff does not explicitly request that the court take judicial notice of these documents attached to their opposition, the Court may still take judicial notice of documents *sua sponte*.  *See* Fed. R. Evid. 201(c)(1); *see also* Notes of Advisory Committee on Proposed Rules Fed. R. Evid. 201(c)(1) ("Under subdivision (c) the judge has a discretionary authority to take judicial notice, regardless of whether he is so requested by a party.").  The Court will

---

[3] Plaintiff filed an amended complaint on November 28, 2024, with additional claims.  ECF No. 23. However, the Court denied Plaintiff's request for leave to amend its complaint on January 31, 2025, pending this motion to dismiss.  ECF No. 29.

1   therefore decide whether to consider Plaintiff's exhibits in deciding the motion to
2   dismiss.

3       **I.    Declarations**

4           The Court will first consider whether Plaintiff's proffered declarations are
5   incorporation by reference in the Complaint.  ECF Nos. 30-1–30-5; ECF No. 33 at 4-12.
6   Defendants argue that the Court should not consider the declarations.  ECF No. 31 at 2.
7   In deciding a motion to dismiss, the court can consider only the pleadings, documents
8   that are incorporated by reference, and documents that are properly the subject of judicial
9   notice.  *Ritchie*, 342 F.3d at 907-08.  "If the plaintiff refers extensively to the document
10  or the document forms the basis of the plaintiff's claim," they are incorporated by
11  reference to the complaint.  *Id.* at 907.  Courts in the Ninth Circuit regularly decline to
12  consider declarations and exhibits submitted in opposition to a motion to dismiss if they
13  constitute evidence not incorporated by reference in the complaint.  *See United States v.*
14  *Hawthorne Machinery Co.*, 2024 WL 4294878, at *3 n.1 (S.D. Cal. 2024); *see also City*
15  *of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 880 F. Supp. 2d 1045, 1060 (N.D. Cal.
16  2012).

17          The declarations in Exhibits 30-1–30-5 discuss LFRA members' experiences and
18  qualifications.  ECF No. 30-1–30-5.  Plaintiff does not allege such facts in its complaint.
19  *See generally* Compl.  The possibility that the declarations might be relevant in assessing
20  the ultimate validity of LFRA's claims does not mean that the court can consider it in
21  deciding a motion to dismiss.  *Gerritsen v. Warner Bros. Ent.*, 112 F. Supp. 1011, 1022
22  (C.D. Cal. 2015).  Because the LFRA members' experiences and qualifications were not
23  mentioned in the complaint, they cannot be found to be incorporated by reference.
24  *See City of Royal Oak Retirement*, 880 F. Supp. 2d at 1060.

25          Accordingly, the Court declines to consider the declarations in deciding the motion
26  to dismiss.

27

28

5

1

## II.    Certificates of Good Standing

2

The Court also considers incorporation by reference of the Certificates of Good

3

Standing.  *See* ECF No. 30-6; ECF No. 33 at 3.

4

Plaintiff references the good standing of their members in the Complaint.  Compl.

5

¶¶ 3, 21.  Plaintiff also references throughout the complaint that it intends on submitting

6

Certificates of Good Standing.  Compl. ¶¶ 51, 56.  When documents have been

7

referenced extensively throughout the complaint, they are treated as part of the document

8

itself.  *Khoja v. Orexigen Therapeutics*, Inc., 899 F.3d 988, 1002 (9th Cir. 2018).

9

Plaintiff sufficiently referenced the good standing of their members in the Complaint, and

10

therefore the Certificates of Good Standing are incorporated by reference.  The Court also

11

notes that the good standing of the members of LFRA is publicly available on state bar

12

websites.  *See White v. Martel*, 601 F.3d 882, 885 (9th Cir. 2010) (taking judicial

13

notice of membership information reported on the California State Bar website); *see also*

14

*Singh v. Gonzales*, 231 F. App'x 648, 650 n.1 (9th Cir. 2007) (taking judicial notice of an

15

attorney's disbarment pursuant to Fed. R. Evid. 201).

16

Therefore, the Court will consider the Certificates of Good Standing in deciding

17

the motion to dismiss.

18

## LEGAL STANDARDS

19

Federal Rule of Civil Procedure ("Rule") 12(b)(6) permits dismissal for "failure to

20

state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Rule

21

12(b)(6) requires the Court to dismiss claims that fail to establish a cognizable legal

22

theory or do not allege sufficient facts to support a cognizable legal theory.  *Mendiondo*

23

*v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) (citation

24

omitted).  And under Rule 8(a)(2), a complaint must contain "a short and plain statement

25

of the claim which entitles the pleader to relief."  Fed. R. Civ. P. 8(a)(2).

26

27

28

6

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted); *Doe v. United States*, 419 F3d 1058, 1062 (9th Cir. 2005).

To survive a Rule 12(b)(6) motion to dismiss, a complaint does not need detailed factual allegations but must provide allegations that raise a right to relief above the speculative level. *Twombly*, 550 U.S. at 555. While the plausibility standard is not a probability test, it does require more than a mere possibility the defendant acted unlawfully. *Id.* at 556. "When evaluating a Rule 12(b)(6) motion, the Court must accept all material allegations in the complaint as true and construe them in the light most favorable to the moving party." *Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 956 (9th Cir. 2013).

1

**DISCUSSION**[4] [5]

2

## I.    Dismissal Under Rule 12(b)(5)

3

Defendants initially argued that dismissal was required based on insufficient

4

service of process under Rule 12(b)(5).  ECF No. 13 at 3-4.  However, Defendants

5

subsequently filed a notice of waiver of defects in service of process, in which they stated

6

7

_____

8

[4] Defendants assert that Plaintiff abandoned various claims because it failed to respond to a number of

9

arguments in Defendants' motion to dismiss.  ECF No. 31 at 2; *see generally* ECF Nos. 13 & 30.  A
plaintiff who makes a claim for relief in their complaint but fails to raise the issue in response to a

10

defendant's motion to dismiss abandons their claim.  *Manning v. United States DOD*, 791 F. App'x.
675, 676 (9th Cir. 2020) (citing *Walsh v. Nev. Dep't. of Human Res.*, 471 F.3d 1033, 1037 (9th Cir.

11

2006)).  However, the Court finds that Plaintiff provided sufficient argument in their opposition to the
motion to dismiss to maintain all claims for further review.  *See, e.g.*, ECF No. 30 at 21-22.

12

[5] On March 18, 2025, one day after the Court vacated the hearing on the motion to dismiss, Plaintiff
filed a motion for leave to file supplemental authorities and a request for judicial notice.  ECF No. 39.

13

Defendant opposes both.  ECF No. 40.  The supplemental authority Plaintiff brings to the Court's
attention is *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist.*, 82 F.4th 664 (9th Cir. 2023)

14

(en banc).  ECF No. 39 at 3-6.  This case was decided in 2023, long before the briefing on the instant
motion to dismiss began.  And the time to brief the issues in this motion to dismiss has now passed.

15

Because Plaintiff does not explain why it could not have brought the case to the Court's attention in its
original opposition, the Court DENIES the motion for leave to file supplemental authorities.  *See Taylor*

16

*v. Borders*, 2021 WL 9721279, at *1 (C.D. Cal. Nov. 4, 2021) (denying motion for supplemental where
plaintiff failed to include citations to a certain case in previously filed opposition brief and failed to

17

explain why they were unable to include the citations in the original opposition brief); *see also id.*
(noting that while the court has the inherent authority to permit supplemental briefs upon a showing of

18

good cause, no such showing was made).

19

Plaintiff also requests that the Court take judicial notice of an op-ed regarding a different case Plaintiff

20

has brought against the United States concerning admission to federal district courts.  *See* ECF No. 39 at
1-3; ECF No. 39-1.  "Courts may take judicial notice of publications introduced to 'indicate what was in

21

the public realm at the time, not whether the contents of those articles were in fact true.'"  *Van Saher v.
Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) (citing *Premier Growth*

22

*Fund v. Alliance Cap. Mgmt.*, 435 F.3d 396, 401 n.15 (3d Cir. 2006); *Heliotrope Gen. Inc. v. Ford*
*Motor Co.*, 189 F.3d 971, 981 n. 118 (9th Cir. 1999)).  But Plaintiff's request discusses the substance of

23

the article heavily, indicating that it would like to introduce the article not just to acknowledge its
existence, but to bring its contents into consideration.  This is improper, especially considering the lack

24

of relevance the existence of the article holds here.  *See Gerritsen*, 112 F. Supp. 3d at 1029-30
("Gerritsen clearly seeks to have the court take judicial notice of the *truth* of the facts states in the

25

various press releases and news articles.  This court cannot do.  Because it is irrelevant … that the
information in the press releases and news articles was publicly available, the court declines to take

26

judicial notice…").  The Court therefore DENIES Plaintiff's request for judicial notice.

27

28

their intent to waive this argument.  ECF No. 18.  Because Defendants have explicitly waived their Rule 12(b)(5) argument, the Court DENIES their motion to dismiss pursuant to Rule 12(b)(5).  *See Alamzad v. Lufthansa Consulting GMBH*, 2005 WL 1869400, at *1 n.1 (N.D. Cal. Aug. 4, 2005) ("a waiver of service normally waives any challenge to the timeliness or sufficiency of service); *see also United States v. 79.36 Acres of Land*, 951 F.2d 364, at *2 (9th Cir. 1991) (finding that defendant waived any claim of improper service because it failed to object to the sufficiency of process) (unpublished disposition); *Campbell v. Fernando-Sholes*, 2006 WL 2917353, at *3 (D. Ariz. Oct. 10, 2006) ("Oasis waived any objection to sufficiency of service of process").

## II.     Count One: Equal Protection and Privileges and/or Immunities Clauses

Plaintiff's Count One alleges that Arizona's reciprocal admission rule violates the Fourteenth Amendment's Equal Protection and Privileges or Immunities Clauses.  Compl. ¶¶ 38-45.  Plaintiff's Count One further alleges that the rule violates the Article IV, § 2 Privileges and Immunities Clause.  *Id.*  The Court will consider each of these challenges separately.

### a.  Equal Protection Clause

Defendants argue that the complaint fails to state a claim that Arizona's reciprocal admission rule violates the Fourteenth Amendment's Equal Protection Clause.  ECF No. 13 at 4-5.  "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of its laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)).  When a law or rule makes a classification on suspect grounds, race, ancestry, or alienage, or impinges upon a fundamental right, it must satisfy a heightened level of scrutiny.  *Kahawaiolaa v. Norton*, 386 F.3d 1271, 1277 (9th Cir. 2004).  If a law or rule is not subject to heightened scrutiny, courts otherwise apply the

1    lowest level of scrutiny: the so-called "rational basis" review. *FCC v. Beach Commc'ns,*

2    *Inc.*, 508 U.S. 307, 313 (1993).

3                    **i.    Level of Scrutiny**

4           The Court must first determine what level of scrutiny to apply.

5           Defendants contends that the Ninth Circuit's decision in *NAAMP v. Berch*, 773

6    F.3d 1037, 1045 (9th Cir. 2014), is directly applicable and defeats Plaintiff's claim. The

7    Court agrees. In *Berch*, the court considered plaintiff's[6] argument that the Arizona Bar's

8    reciprocal admission rule violates, *inter alia*, the Equal Protection Clause. *Id.* The court

9    first held that, because the rule "does not disadvantage a suspect class or infringe on a

10   fundamental right," it is subject to rational basis review. *Id.* The court reasoned that the

11   rule serves two legitimate state interests: regulating the state bar and ensuring Arizona

12   attorneys are treated equally in other states. *Id.* And the rule "serves these purposes

13   without being unduly restrictive," as there are alternative paths to bar membership,

14   namely passing the UBE. *Id.* Therefore, the court found that the reciprocal admission

15   rule did not violate the Equal Protection Clause. *Id.*

16          The identical reciprocal admission rule here is also subject to rational basis review.

17   It does not make classifications based upon race, ancestry, alienage, or any other suspect

18   class. Nor does it burden any fundamental rights. This Court joins a long list of courts in

19   subjecting these types of state bar and court admission rules to rational basis review. *See*

20   *id.*; *NAAMP v. Castille*, 799 F.3d 216, 219-20 (3d Cir. 2015) (finding Pennsylvania's

21   reciprocity rule subject to rational basis review because it "does not classify attorneys

22   based on residency, but rather, their state of bar admission, and it does not erect a barrier

23   to migration") (quoting *Schumacher v. Nix*, 965 F.2d 1262, 1268 (3d Cir. 1992)

24

25   _____

26   [6] The plaintiff in *Berch* was represented by Joseph Giannini, who represents LFRA here. *Berch*, 773
     F.3d at 1042. In fact, Mr. Giannini has brought these types of challenges to bar admission requirements
27   across the country for several decades. *See id.* at 1043 (collecting cases).

28

1  (collecting cases)); *NAAMP v. Lynch*, 826 F.3d 191, 196-97 (4th Cir. 2016) (finding

2  district court's reciprocity rule subject to rational basis review because it does not

3  infringe upon a fundamental right or make distinctions based on suspect classes); *see also*

4  *Giannini v. Real*, 911 F.2d 354, 358 (9th Cir. 1990) ("[o]verwhelming legal authority

5  supports this view that review of state procedures for bar admissions and testing is guided

6  by the rational basis standard").

7        Plaintiff relies on language from the Supreme Court's recent decision *Students for*

8  *Fair Admissions, Inc. v. President and Fellows of Harvard College*, 600 U.S. 181 (2023),

9  presumably to argue that Arizona's reciprocal admission rule should be subject to strict

10  scrutiny. *See* ECF No. 30 at 10-11. There, the Court considered a challenge to Harvard

11  College and the University of North Carolina's admissions systems, which both took race

12  into account with the goal of bringing the benefits of diversity to their campuses and the

13  future workforce. *Students for Fair Admissions*, 600 U.S. at 191, 214-15. The Court

14  found that the admissions systems failed to overcome strict scrutiny because they "lack

15  sufficiently focused and measurable objectives warranting the use of race, unavoidably

16  employ race in a negative manner, involve racial stereotyping, and lack meaningful end

17  points. *Id.* at 230.

18        In concluding, the Court stated that, instead, a "student must be treated based on

19  his or her experiences as an individual—not on the basis of race." *Id.* at 231. This is the

20  reasoning that Plaintiff ostensibly relies on when it argues that Arizona's reciprocal

21  admission rule is subject to strict scrutiny because it is based on "class status" and not

22  "individual merit and individual experience." *See* ECF No. 30 at 10. To be sure, the

23  Supreme Court's decision in *Students for Fair Admission* endorses the idea that a student

24  should not be granted preference based on race alone, but rather should be judged "by his

25  or her own merit and essential qualities." 600 U.S. at 219-20; *see also id.* at 231. But the

26  "class status" at issue in *Students for Fair Admission* is clearly race and ethnicity. *Id.* at

27

28

214.  The Court says nothing to indicate that the same treatment would be applicable to a state professional licensing scheme that distinguishes between experienced professionals who are licensed in different states.  Plaintiff says nothing to that end, either.  Thus, Plaintiff eludes the most important question raised by its own challenge: why experienced lawyers from certain states should constitute a "class" and therefore be subject to strict scrutiny.  Because *Students for Fair Admission* has no relevance in this case—which does not deal with race[7]—Plaintiff's attempt to cherry-pick its language to invoke strict scrutiny fails.

The Court will therefore apply rational basis review to Arizona's reciprocal admission rule.

### ii.    Rational Basis Review

Under rational basis review, the court must consider whether the challenged rule "rationally further[s] a legitimate state interest." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992).  "[R]ational-basis review in equal protection analysis 'is not a license for courts to judge the wisdom, fairness, or logic of legislative choices.'" *Heller v. Doe,* 509 U.S. 312, 319 (1993) (quoting *Beach Commc'ns*, 508 U.S. at 313).  Rather, classifications subject to rational basis review are "accorded a strong presumption of validity," *Heller*, 509 U.S. at 319-20,  and must be upheld "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification," *Beach Commc'ns*, 508 U.S. at 313.

Here, the Ninth Circuit has already determined that Arizona's reciprocal admission rule serves two legitimate state interests.  *Berch*, 773 F.3d at 1045.  First, the rule "helps Arizona regulate its bar: 'The Supreme Court is extremely deferential to legislative

---

[7] In fact, Arizona's reciprocal admission rule does not mention race at all.  Ariz. R. Sup. Ct. 34(f).  It applies to all out-of-state experienced lawyers regardless of race, ancestry, alienage, gender, or any other suspect class.  *Id.*  This, it seems, is exactly what *Students for Fair Admission* would call for.

classifications in actions challenging regulation of licensed professions.'" *Id.* (quoting *Lupert v. Cal. State Bar*, 761 F.2d 1325, 1328 (9th Cir. 1985). Second, reciprocity helps the state "ensure that its attorneys are treated equally in other states," as "[s]tates that share reciprocity with Arizona will likely continue to admit Arizona-barred attorneys on motion because members of the bar in those states are eligible for reciprocal privileges in Arizona." *Id.* Further, there are several viable alternatives to gaining admission to the Arizona Bar based on reciprocity. Attorneys seeking admission can pass the UBE, *id.*, or apply for *pro hac vice* admission, *see Castille*, 799 F.3d at 224. Therefore, the reciprocal admission rule rationally furthers the state's legitimate interests "without being unduly restrictive." *Berch*, 773 F.3d at 1045.

Plaintiff argues that that Defendants' reliance on *Berch* is not persuasive because the "Supreme Court has overturned the professional speech doctrine[.]" ECF No. 30 at 12-16.[8] In making this argument, Plaintiff refers to the following sentence in the *Berch* equal protection analysis: "The Supreme Court is extremely deferential to legislative classifications in actions challenging regulation of licensed professions." *Berch*, 773 F.3d at 1045 (quoting *Lupert*, 761 F.3d at 1328). While the Supreme Court has in fact invalidated the professional speech doctrine, that is of no moment here. The professional speech doctrine dealt with the level of scrutiny applied to content-based restrictions of professional *speech*. *Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 585 U.S. 755, 767-68 (2018). This First Amendment doctrine would not apply in the equal protection context. What is more, *Berch* and *Lupert*'s equal protection analysis have nothing to say about the professional speech doctrine. The court in *Berch* does not reference *Lupert* to rely on any discussion about professional speech. Rather, *Lupert*—and the cases cited therein—deals

---

[8] While Plaintiff makes this challenge in the context of its First Amendment claims, the general attack on *Berch* is relevant here. *See* ECF No. 30 at 12-16. And Plaintiff otherwise fails to grapple with Defendants' equal protection arguments. *See generally id.* (absence).

more generally with the deference accorded to legislative *classifications* in the context of licensed professions, such as opticians, *see Williamson v. Lee Optical of Okla. Inc.*, 348 U.S. 483 (1955), and physicians, *Watson v. Maryland*, 219 U.S. 173 (1910). *See Lupert*, 761 F.2d at 1328. This is the general principle the Ninth Circuit relied on in *Berch*, and which the Court relies on now. The validity of the professional speech doctrine therefore does not impact this equal protection analysis.

Because Plaintiff fails to plausibly allege that Arizona's reciprocal admission rule violates the Equal Protection Clause, the Court GRANTS Defendants' motion to dismiss this claim.

### b. Article IV, § 2 Privileges and Immunities Clause

Plaintiff also alleges that Arizona's reciprocal admission rule violates the Privileges and Immunities Clause of Article IV, § 2 of the Constitution. Compl. §§ 38-45. "Under the Privileges and Immunities Clause, '[t]he Citizens of each State [are] entitled to all Privileges and Immunities of Citizens in the several States.'" *McBurney v. Young*, 569 U.S. 221, 226 (2013) (alterations in original) (quoting U.S. Const., art. IV., § 2, cl. 1). Courts employ a two-step inquiry in assessing challenges under the Privileges and Immunities Clause. *Marilley v. Bonham*, 844 F.3d 841, 846 (9th Cir. 2016) (en banc) (citing *Sup. Ct. of Va. V. Friedman*, 487 U.S. 59, 64 (1988)). First, the plaintiff "must show that the challenged law treats nonresidents differently from residents and impinges upon a 'fundamental' privilege or immunity protected by the Clause.'" *Id.* If the plaintiff makes this showing, "the burden shifts to the state to show that the challenged law is 'closely related to the advancement of a substantial state interest.'" *Id.*

It is true that "[i]n *Supreme Court of New Hampshire v. Piper,* the Supreme Court held that the practice of law is a fundamental right under the Privileges and Immunities Clause because it is 'important to the national economy' and because it 'has a noncommercial role and duty.'" *Berch*, 773 F.3d at 1045-46 (quoting *Sup. Ct. of N.H. v.*

*Piper*, 470 U.S. 274, 281 (1985)).  Nonetheless, Plaintiff's claim fails at the first step because it cannot show that the rule treats nonresidents differently from residents and impinges upon any protected privilege or immunity.

Defendants contend that Arizona's attorney admission scheme "does not favor Arizona's in-state citizens over out of-state citizens."  ECF No. 13 at 6 (quoting *Berch* 773 F.3d at 1046) (internal quotation marks omitted)).  Plaintiff responds that the rule "treats citizens from some states differently that [sic] citizens from other states."  ECF No. 30 at 22.[9]  Plaintiff's argument misapplies the law.  "The purpose of the Privileges and Immunities Clause is to prevent 'a state from discriminating against citizens of other states in favor of its own.'"  *Berch*, 773 F.3d at 1046 (quoting *Hague v. Comm. for Indus. Org.*, 307 U.S. 496, 511 (1939)).  As the court reasoned in *Berch*, the rule here is neutral because it "imposes the same bar admission requirements on its own citizens as it does on citizens of other states."  *Id.*  Thus, even if it were true that the rule treats citizens of some states differently from citizens of other states, it would not matter because it does not favor Arizona citizens over citizens of other states.  Rather, the rule applies evenhandedly to all attorneys, "irrespective of [their] residency or citizenship status."  *Id.*; *see also McBride v. Lawson*, 2024 WL 4826378, at *7 (E.D. Cal. Nov. 19, 2024) ("[T]he complaint does not include allegations to show California's licensing laws treat residents and nonresidents differently.  The Ninth Circuit has upheld equivalently neutral attorney licensing rules.").

---

[9] Again relying on its unfounded interpretation of *Students for Fair Admission*, Plaintiff further argues that, because Arizona's bar admission standards are allegedly based on "class status" and not "individual merit," they are "obviously unconstitutional."  ECF No. 30 at 22.  But Plaintiff does not make clear how this argument fits into the Privileges and Immunities analysis.  The Court rejects this irrelevant argument.

Plaintiff cites several Supreme Court cases dealing with bar admission rules which imposed impermissible residency requirements on bar applicants in violation of the Privileges and Immunities Clause.  *See* ECF No. 30 (citing *Piper*, 470 U.S. at 274; *Sup. Ct. of Va. v. Friedman*, 487 U.S. 59 (1988); *Barnard v. Thorstenn*, 489 U.S. 546, 556 (1989)).  Plaintiff seems to argue that this line of cases warrants a similar holding here. *See id.*  The Ninth Circuit rejected a similar argument in *Berch*:

> The cases cited by Plaintiffs stand only for the proposition that bar admission rules that impose *residency requirements* on bar applicants violate the Privileges and Immunities Clause. *See Piper,* 470 U.S. at 275, 105 S.Ct. 1272 (resident of Vermont challenging New Hampshire's limit of bar admission to New Hampshire residents); *Sup. Ct. of Va. v. Friedman,* 487 U.S. 59, 61, 108 S.Ct. 2260, 101 L.Ed.2d 56 (1988) (resident of Illinois challenging Virginia's limit of bar admission to Virginia residents). The AOM Rule, on the other hand, relies solely on state of bar admission, and applies equally to residents and non-residents of Arizona.

773 F.3d at 1046.  The Court here similarly finds that these cases are inapposite because they deal with residency requirements, and not merely state of bar admission. *See Barnard*, 489 U.S. at 556 (dealing with "[t]he exclusion of nonresidents from the bar").

Because Plaintiff fails to state a claim under the Privileges and Immunities Clause of Article IV, § 2 of the Constitution, the Court GRANTS Defendants' motion to dismiss this claim.

### c.  Fourteenth Amendment Privileges or Immunities Clauses

Plaintiff also claims that Arizona's reciprocal admission rule violates the Fourteenth Amendment's Privileges or Immunities Clause.  Compl. ¶¶ 38-45. Traditionally, this Clause "protected only those rights accruing by virtue of being a citizen of the United States."  *Paciulan v. George*, 229 F.3d 1226, 1229 (9th Cir. 200) (citing the *Slaughter-House Cases*, 83 U.S. 36 (1873); John E. Nowak and Ronald D.

Rotunda, *Constitutional Law* § 10.3 (5th ed. 1995)).  But the Supreme Court has also applied the clause "in a right-to-travel context to hold that travelers deciding to become permanent residents of a new state enjoy 'the right to be treated like other citizens of that State.'"  *Id.* (quoting *Saenz v. Roe*, 526 U.S. 489, 500-07 (1999)).

Defendants argue that the right to practice law is not a fundamental right protected by the Privileges or Immunities Clause.  ECF No. 13 at 5.  Defendants are correct: "the right to practice law is not one of those rights" accruing from United States citizenship.  *Berch*, 773 F.3d 1046.  Therefore, Plaintiff has no claim under the Privileges or Immunities Clause arising from the Fourteenth Amendment.  *See also Castille*, 799 F.3d at 220 (rejecting similar Privileges or Immunities Clause claim for the same reasons the court rejected appellants' Equal Protection Clause challenge).

To the extent Plaintiff asserts that *Saenz* changes the outcome here, it is mistaken.  In *Saenz*, California limited the welfare benefits of those who had lived in the state for less than one year.  526 U.S. at 493.  The Court reasoned that "the right to travel embraces the citizen's right to be treated equally in her new State of residence[.]"  *Id.* at 505.  Here, much to the contrary, Arizona is treating all its citizens—both new and long-term—the same as citizens of any other state in the country.  For instance, an Arizona resident who is admitted only to the state bar in California is subject to the same reciprocal admission rules as a New York resident who is admitted only to the state bar in California.  *See Berch*, 773 F.3d at 1046-47 ("[i]n this case, [the right to travel] is not infringed because the AOM rule treats non-state residents the same way as it treats residents of Arizona"); *cf. Paciulan*, 229 F.3d at 1229 ("[i]n requiring Appellants to meet the standard requirements for admission to the California bar, the State Bar is ensuring that they will be treated like all other California citizens).  Therefore, Plaintiff's argument fails.

1     Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiff's claim

2 under the Fourteenth Amendment Privileges or Immunities Clause.

3           **d.  Arizona Constitution's "Special Law" Prohibition**

4     In opposing the motion to dismiss, Plaintiff claims that it adequately pleads a claim

5 for a violation of the Arizona Constitution's "special law" rule.[10]  ECF No. 30 at 22-24.

6 Plaintiff purportedly pleads this claim as part of its Equal Protection Clause claim.  *Id.* at

7 22.  It is true that "[t]he equal protection clauses of the 14th Amendment and the state

8 constitution have for all practical purposes the same effect."  *Valley Nat. Bank of Phoenix*

9 *v. Glover*, 159 P.2d 292, 299 (Ariz. 1945); *see Henry v. City of Somerton*, 2021 WL

10 2514686, at *12 (D. Ariz. June 17, 2021) ("the equal protection analysis is the same

11 under both constitutions").  Further, Fed. R. Civ. P. 8 does "not countenance dismissal of

12 a complaint for imperfect statement of the legal theory supporting the claim asserted."

13 *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014).  And Defendants contend with

14 the claim in their reply brief.[11]  *See* ECF No. 31 at 10.  Therefore, in the interests of

15 judicial efficiency, the Court will consider the imperfectly pled state constitution claim

16 here.

17     The Arizona Constitution provides that "[n]o local or special laws shall be enacted

18 … [r]egulating the practice of courts of justice."  Ariz. Const. art. IV, Pt. 2 § 19.  "Special

19 laws favor one person or group and disfavor others."  *Gallardo v. State*, 336 P.3d 717,

20 721 (Ariz. 2014).  Plaintiff argues that the challenged rule is a special law because it only

---

[10] Plaintiff included a claim under this state constitution provision in its proposed First Amended Complaint ("FAC").  *See* ECF No. 25-1 at 64-66.  However, the Court denied Plaintiff leave to amend, ECF No. 29, and thus this claim is not explicitly pled in the operative complaint.  *See generally* Compl.

[11] Defendants also incorporate by reference their discussion on special laws in their opposition to Plaintiff's motion for leave to amend its complaint.  ECF No. 26 at 10-11.  There, Defendants explained why Arizona's prohibition against special laws does not apply here.  *Id.*

1  requires experienced lawyers from some states to pass the UBE to gain admission to

2  practice law in Arizona.  *Id.* at 23-24.

3       As a threshold matter, article 4, part 2 of the Arizona Constitution applies to acts of

4  the legislature, not the state judiciary.  *See Hoffman v. Reagan*, 429 P.3d 70, 72 (Ariz.

5  2018) ("[t]he legislature's structure and powers are outlined in article 4, part 2 of the

6  Arizona Constitution"); *Republic Inv. Fund I v. Town of Surprise*, 800 P.2d 1251, 149

7  (Ariz. 1990) (in banc) ("the *legislature* must enact laws that apply to all individuals who

8  may benefit from its attempt to remedy a particular evil") (emphasis added).  Therefore,

9  Plaintiff cannot plausibly challenge Arizona's reciprocal admission rule, which the state

10  judiciary sets and implements, under article 4, part 2 of the Arizona Constitution.

11       Even if the special laws provision applies to Defendants, Plaintiff fails to state a

12  claim.  To determine whether a law is a "special law," Arizona courts decide whether: (1)

13  the law has "a rational relationship to a legitimate legislative objective," (2) the

14  classification the law makes is legitimate and encompasses all similarly situated people,

15  and (3) the classification is elastic, allowing others to come within or leave the class.

16  *Gallardo v. State*, 336 P.3d 717, 721 (Ariz. 2014).  As discussed above, Arizona's

17  reciprocal admission rule clearly has a rational basis.  *See* "Discussion" Section II.a,

18  *supra*.  The rule applies to all Arizona citizens equally.  *See Republic Inv. Fund I*, 800

19  P.2d at 1258 ("[t]o be general, a law need not operate on every person, place, or thing

20  within the state; however, it must apply uniformly to all cases and to all members within

21  the circumstances provided for by the law").  And the rule is "elastic," as it allows

22  lawyers who gain admission to other state's bars to come within the class, while allowing

23  those who have successfully gained admission to the Arizona bar to exit the class.  Thus,

24  even assuming the prohibition against "special laws" applies here, Arizona's reciprocal

25  admission rule does not constitute a "special law."

19

24-cv-02175-PHX-GPC

Accordingly, Plaintiff does not state a claim under the Arizona Constitution's "special law" rule.  The Court GRANTS Defendants' motion to dismiss this claim.

### III.     Count Two: 28 U.S.C. § 1738

Plaintiff's Count Two alleges that Arizona's reciprocal admission rule violates 28 U.S.C. § 1738.  Compl. ¶¶ 46-62.  "The Full Faith and Credit Clause and its implementing statute[, 28 U.S.C. § 1738,] require that federal courts give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered."  *Heidrich v. PennyMac Fin. Servs., Inc.*, 792 F. App'x 540, 541 (9th Cir. 2020) (internal citations and quotation marks omitted).

Defendants first argue that the Full Faith and Credit Clause and its implementing statutes do not give rise to an implied federal cause of action.  ECF No. 13 at 6.  Indeed, the Supreme Court has squarely stated that "the Full Faith and Credit Clause, in either its constitutional or statutory incarnations, does not give rise to an implied federal cause of action."  *Thompson v. Thompson*, 484 U.S. 174, 182 (1988).  Courts in this Circuit, along with other circuit courts, are in accord with this interpretation.  *See Griffith v. Paran LLP*, 2021 WL 4442881, at *1 (E.D. Cal. Sept. 28, 2021) ("neither the Full Faith and Credit Clause of the United States Constitution nor the corresponding statute, 28 U.S.C. § 1738, provides a private right of action for plaintiff to obtain enforcement of a foreign judgment") (citing *People of State of Cal. ex rel. McColgan v. Bruce*, 129 F.2d 421, 424 (9th Cir. 1942)); *Williams v. Clark Cnty. Pub. Adm'r*, 2010 WL 4340654, at *6 (D. Nev. Oct. 26, 2010) ("there is no private right of action for enforcement of the Full Faith and Credit Clause in federal court, either directly or under the implementing statute, 28 U.S.C. § 1738") (citing *Minnesota v. N. Sec. Co.*, 194 U.S. 48, 72 (1904); *Thompson v. Thompson*, 798 F.2d 1547, 1555-56 (9th Cir. 1986)); *Caballero v. Fuerzas Armadas Revolucionarias de Colombia*, 945 F.3d 1270, 1274-75 (10th Cir. 2019) ("the Full Faith

and Credit Clause, in either its constitutional or statutory incarnations, does not give rise to an implied federal cause of action") (cleaned up).

Even if Plaintiff could bring a cause of action under the Full Faith and Credit Clause and 28 U.S.C. § 1738, Plaintiff fails to state a claim.  The Ninth Circuit addressed a similar claim in *Thaw v. Sessions*, 712 F. App'x 604 (9th Cir. 2017).  There, the appellants challenged a District of Arizona local rule which "limits membership in the bar of the district court to attorneys who are active members in good standing of the Arizona bar." *Id.* at 605.  The court explained that "the predicate for a full faith and credit claim is an act, record, or judicial proceeding of some state that establishes appellants' entitlement to practice law in the forum state." *Id.*  The Court found that no such document had been adduced, and thus affirmed the district court's dismissal of the claim. *Id.*  Similarly, here, Plaintiff does not allege that any act, record, or judicial proceedings in another state declares that any of its members are entitled to practice law in Arizona. *See Giannini*, 911 F.2d at 360 ("Giannini's claim lacks merit because no act, record or judicial proceeding, in New Jersey or Pennsylvania, states that Giannini is entitled to practice law in California").

Plaintiff cites several Supreme Court cases which discuss the importance of the Full Faith and Credit Clause, including *VL v. EL*, 577 U.S. 404 (2016) (per curiam) (finding that Alabama courts must respect the judgments of a Georgia court), and *Univ. of Tenn. v. Elliott*, 478 U.S. 788 (1986) (finding that federal courts must give a state "agency's factfinding the same preclusive effect to which it would be entitled in the State's courts").  ECF No. 30 at 17-18.  Plaintiff then argues that its members have been admitted to practice law by "public acts, judicial records, and [state supreme court] order[s]," and that therefore the Arizona Supreme Court must recognize these "judgments." *Id.* at 18-19.  However, as discussed above, Plaintiff does not allege that these acts, records, or judicial proceedings entitle its members to practice law in *Arizona*

21

1  (as opposed to the members' states of admission).  And even if they did, Plaintiff points

2  to no case law—and the Court is not aware of any case law—which suggests that a state's

3  bar admissions are the type of "acts, records, or judicial proceedings" which are covered

4  by the Full Faith and Credit Clause and § 1738.  *See id.* (absence).

5         Accordingly, the Court GRANTS Defendant's motion to dismiss Plaintiff's claim

6  under 28 U.S.C. § 1738.

7  **IV.    Count Three: First Amendment**

8         Plaintiff alleges a flurry of First Amendment violations in its Complaint.  Compl.

9  ¶¶ 63-81.  Plaintiff first alleges that Arizona's reciprocal admission rule constitutes an

10  impermissible prior restraint on its constitutional right to petition.  *Id.* ¶¶ 67-72.  Plaintiff

11  then alleges that the rule constitutes viewpoint, speaker, and content discrimination.  *Id.*

12  ¶¶ 73-78.[12]  Plaintiff also alleges that the rule violates its right to association.  *Id.* ¶¶ 79-

13  81.  The Court will consider these claims in turn.

14         **a.  Prior Restraint; Right to Petition**

15         Plaintiff alleges that the reciprocal admission rule is a prior restraint on its

16  member's right to petition the government for the redress of grievances.  *Id.* ¶¶ 67-72.

17  Specifically, Plaintiff alleges that the rule repeals petition rights because it assumes that

18  "all licensed lawyers from nine states will file sham petitions for an anti-competitive

19  purpose."  *Id.* ¶ 68A.  Plaintiff further alleges that "lawyers from nine states are required

20  to reinvent the wheel on an entry level licensing test and lawyers from forty-one states

21  get an exemption."  *Id.* ¶ 72.  Plaintiff does not specifically defend this claim in its

22  opposition brief.  *See* ECF No. 30 at 12-16 (absence).

23         "[T]he Petition Clause protects the right of individuals to appeal to courts and other

24  forums established by the government for the resolution of legal disputes."  *Borough of*

---

[12] The Court will consider these together as a free speech challenge.

1  *Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 387 (2011).  As Defendants point out, Plaintiff

2  does not allege—nor is it clear to the Court—that the reciprocal admission rule denies

3  "meaningful access to the courts." *Berch*, 773 F.3d at 1048.  In fact, "[a]s long as

4  attorneys are admitted under the [reciprocal admission rule], or pass the UBE, they may

5  still practice in Arizona courts." *Id.* (citing *Paciulan*, 229 F.3d at 1230); *see also*

6  *Castille*, 229 F.3d at 224 (rejecting Petition Clause challenge in part because attorneys

7  "maintain the right to represent clients in Pennsylvania courts so long as they take the bar

8  exam or apply for *pro hac vice* admission").  Therefore, Plaintiff fails to state a claim for

9  relief under the Petition Clause.

10         Accordingly, the Court GRANTS Defendants' motion to dismiss the Petition

11  Clause claim.

12         **b.  Free Speech**

13         The Court will first address Plaintiff's various claims that Arizona's reciprocal

14  admission rule violates its Free Speech rights under the First Amendment.  The First

15  Amendment prevents the government from "abridging the freedom of speech ... or the

16  right of the people peaceably to assemble, and to petition the Government for a redress of

17  grievances."  U.S. Const. amend. I.  "We consider bar admission restrictions to be time,

18  place, and manner restrictions on speech." *Berch*, 773 F.3d at 1047 (citing *Mothershed v.*

19  *Justices of Supreme Court*, 410 F.3d 602, 611 (9th Cir. 2005) ("In order to further its

20  substantial interest in regulating the legal profession, the State of Arizona may institute

21  reasonable time, place, and manner restrictions on Arizonans' First Amendment right to

22  consult with an attorney.").  Time, place, and manner restrictions are reasonable if they

23  "are justified without reference to the content of the regulated speech, … narrowly

24  tailored to serve a significant governmental interest, and … leave open ample alternative

25  channels for communication of the information." *Ward v. Rock Against Racism*, 491

26  U.S. 781, 791 (1989) (internal quotation marks omitted).

27

28

### i.    Content Neutrality

Plaintiff first assails Arizona's reciprocal admission rule as discriminating based on speaker, viewpoint, and content.  Compl. ¶¶ 73-78; *see* ECF No. 30 at 14-16.  Speech restrictions that target specific speakers, viewpoints, or content are presumptively unconstitutional and may be justified only if they survive strict scrutiny.  *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015); *see id.* at 168-71.  "Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed."  *Id.* at 163.  For instance, laws are content based if they "target speech based on its communicative content," *id.*, or "single[] out particular content for differential treatment," *Berger v. City of Seattle*, 569 F.3d 1029, 1051 (9th Cir. 2009) (en banc).

Plaintiff argues that the rule "favors the viewpoints and the speech of lawyers" from the 39 states Arizona shares reciprocity with, while it "disfavors" the viewpoints and speech of lawyers from the other states.  ECF No. 30 at 16.  Defendants respond that the rule do not target any speech based on content, viewpoint, or speaker.  ECF No. 13 at 8-9.  The Court recognizes that the rule subjects attorneys from some states to different bar admission requirements than attorneys from other states.  However, this fact alone does not make the rule content or viewpoint based.

Rather, what is important here is that the rule does not restrict speech based on who the attorney is, who they are representing, the subject matter of representation, or any viewpoints the attorney holds.  It simply restricts speech based on state of bar admission.  This distinction does not make the rule speaker, viewpoint, or otherwise content based.  *See Simandle*, 658 F. App'x at 136 n.12 (finding bar admission rule content neutral because it "does not differentiate between attorneys based upon their viewpoints or the content of their speech," but rather "differentiates between them based only upon their state bar of admission"); *see also Lynch*, 826 F.3d at 196 ("The Rule does

not compel attorneys to speak or regulate speech based on its content.  Neither does the Rule restrict attorneys from speaking."); *Castille*, 799 F.3d at 221-23 (finding Pennsylvania's reciprocal admission rule to be content neutral because "the fact that attorneys of reciprocal states face fewer hurdles to admission than attorneys of nonreciprocal states does not constitute speaker discrimination" and the rule does not "reflect the Government's preference for the substance of what the favored speakers have to say (or aversion to what the disfavored speakers have to say)").

Accordingly, the Court finds that the rule is content neutral, and therefore subject to intermediate scrutiny.

### ii.     Narrow Tailoring and Alternative Channels of Communication

Because Arizona's reciprocal admission rule is a content neutral time, place, and manner restriction on speech, it must be "narrowly tailored to serve a significant government interest" and "leave open ample alternative channels for communication of the information." *Ward*, 491 U.S. at 791.  Defendants contend that the Court should follow *Berch*, where the court found that Arizona's reciprocal admission rule helps "regulat[e] the practice of law," which is a "substantial government interest," and provides the option of passing the bar exam, "which reduces the quantity of speech that the … [r]ule might otherwise restrict."  ECF No. 13 at 8 (quoting *Berch*, 773 F.3d at 1047).  Plaintiff does not directly respond to this argument.  *See* ECF No. 30 at 14-16 (absence).

As Defendants point out, Arizona's reciprocal admission rule helps the Arizona Bar regulate the practice of law within its jurisdiction and establish standards for licensing attorneys.  These are substantial government interests.  *Berch*, 773 F.3d at 1047; *Mothershed*, 410 F.3d at 611 (recognizing Arizona's "substantial interest in regulating the legal profession"); *see Thaw*, 712 F. App'x at 606 (reaffirming *Berch*'s First Amendment reasoning).  And the rule places only "minimal limitations on expressive

activities," primarily because of the ample alternative channels of communication available to LFRA's members.  *Simandle*, 658 F. App'x at 136; *see Berch*, 773 F.3d at 1047 (finding that the ample available alternatives "reduce[] the quantity of speech that [the reciprocal admission rule] might otherwise restrict").  Among these alternatives are the opportunity to gain admission by taking the uniform bar examination and the ability to obtain *pro hac vice* admission to practice in Arizona courts.  Because the rule does not "impose a blanket prohibition" on out-of-state attorneys' admission to the Arizona bar, it is narrowly tailored.  *Mothershed*, 410 F.3d at 612; *see Berch*, 773 F.3d at 1047 (finding Arizona's reciprocal admission rule to be narrowly tailored); *see also Simandle*, 658 F. App'x at 136 ("[u]nlicensed attorneys are free to represent themselves *pro se*, pass the New Jersey bar exam, or apply for admission *pro hac vice* on a case-by-case basis").

Accordingly, the challenged reciprocal admission rule is a constitutional time, place, and manner restriction.  The Court therefore GRANTS Defendants' motion to dismiss the Free Speech claims.[13]

### c. Right to Association

Plaintiff alleges that Arizona's reciprocal admission rule violates the First Amendment's Free Association Clause.  Compl. ¶¶ 79-81.  This Clause protects the "right to associate with others in pursuit of a wide variety of political, social, economic,

---

[13] Throughout its opposition brief, Plaintiff emphasizes that it brings both as applied and facial challenges to the rule.  ECF No. 30 at 10, 16, 22.  "An as-applied challenge contends that the law is unconstitutional as applied to the litigant's particular speech activity, even though the law may be capable of valid application to others."  *Project Veritas v. Schmidt*, 125 F.4th 929, 939-40 (9th Cir. 2025) (internal citations omitted).  A facial challenge "requires a plaintiff to show that 'a substantial number of the law's applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'"  *Id.* (cleaned up) (citing *Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024)).  Here, Plaintiff has failed to allege that the reciprocal admission rule is unconstitutional as applied in this specific scenario, or in any context at all.  Therefore, both of Plaintiff's challenges fail.

educational, religious, and cultural ends." *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 647 (2000).

In its motion to dismiss, Defendants argue that *Berch* is on-point here.  ECF No. 13 at 9.  In *Berch*, the court reasoned as follows:

> Arizona attorneys and non-Arizona attorneys are free to associate with attorneys who are members of the bars of other states, whether these other states enjoy reciprocity with Arizona or not.  Moreover, the AOM Rule provides bar applicants alternative means for gaining membership in the Arizona Bar. The presence of these alternative means significantly decreases any obstacles to the freedom to associate that might otherwise result from the AOM Rule.

*Berch*, 773 F.3d at 1047-48.  The same reasoning applies here.  The rule does not force out-of-state attorneys to associate with any states that enjoy reciprocity with Arizona, nor does it prevent out-of-state attorneys from associating with the members of any states' bar.  *See Castille*, 799 F.3d at 223-24 (rejecting a similar freedom of association argument because the rule did not significantly affect attorneys' ability to advocate any viewpoints, require them to associate with anyone, and left open alternatives to practicing law in the state).  Because the reciprocal admission rule does not impinge on out-of-state attorneys' freedom to associate with others, Plaintiff fails to state a claim for relief under the Free Association Clause.

Accordingly, the Court GRANTS Defendants' motion to dismiss the Free Association claim.

## V.    Count Four: Fifth and Fourteenth Amendment Due Process

Plaintiff's fourth and final claim alleges violations of Fifth and Fourteenth Amendment Procedural Due Process.  Compl. ¶¶ 82-92.  Plaintiff seems to allege that "[a]n attorney has a constitutionally protected property interest in his or her license to practice law," *id.* ¶ 85 (citing *Cleveland v. United States*, 531 U.S. 12, 25 n.4 (2000); *Gershenfeld v. Justs. of the Sup. Ct. of Pa.*, 641 F. Supp. 1419, 1423 (E.D. Pa. 1986), and

27

that the State Bar is denying attorneys from non-reciprocal states this property right without adequate due process, *id.* ¶ 86. Defendants dispute whether the right to practice law is in fact a protectable property interest. ECF No. 13 at 11-12.

"To allege a due process violation, a claimant must initially demonstrate the existence of a protectable property interest." *Paciulan*, 229 F.3d at 1230 (citing *Leis v. Flynt*, 439 U.S. 438, 441-42 (1979); *Perry v. Sindermann*, 408 U.S. 593, 601-02 (1972)). The court in *Paciulan* held that the appellants had no viable due process claim because the right to practice law *pro hac vice* is not a protectable property interest. *Id.* (citing *Leis*, 439 U.S. at 443 ("There is no right of federal origin that permits such lawyers to appear in state courts without meeting that State's bar admission requirements.")); *Maynard v. U.S. Dist. Ct. for the Cent. Dist. of Cal.*, 701 F. Supp. 738, 743 (C.D. Cal. 1988) ("Maynard does not cite any rule, statute, or understanding that would support her claim of denial of a property right to practice law in the district court. Furthermore, courts have held that the right to practice law is not a property right protected by the Due Process Clause.") (internal citations omitted). For the same reasons, Plaintiff fails to allege a protectable property interest here.

Plaintiff relies on *Cleveland* and *Gershenfeld* to argue that the right to practice law is a protected property interest. The Court is not persuaded by these cases. In *Cleveland* the Supreme Court only noted that "[i]n some contexts, … individuals have constitutionally protected property interests in state-issued licenses essential to pursuing an occupation or livelihood." *Cleveland*, 531 U.S. at 25 n.4. But the Court's only noted example was *Bell v. Burson*, 402 U.S. 535, 539 (1971), where it found a protectable property interest in a driver's license. There, the Court held that once the state had issued a driver's license, it could not then suspend the license without adequate procedural due process. *Id.* at 540-42. However, *Paciulan* and the instant case are distinct from *Bell*. In *Paciulan*, the California Bar was not revoking existing licenses to practice law in

1    California, but rather was denying *pro hac vice* admission to those who had licenses in

2    other states.  *Paciulan*, 229 F.3d at 1227-28.  Similarly, here, the Arizona Bar is not

3    revoking licenses to practice law in Arizona, but rather denying admission to those who

4    are licensed in other states.  Further, a license to practice law is much different from a

5    driver's license, primarily because, as noted throughout this Order, there are several

6    viable alternatives to reciprocal admission, whereas there may not be viable alternatives

7    to driving to work.  Thus, *Cleveland* and *Bell* do not change the analysis here.

8           The court's decision in *Gerhenfeld* is also inapposite.  While the Court there did

9    hold that the "plaintiff's license to practice law … is a property interest sufficient to

10   invoke due process protections," 641 F. Supp. at 1423, the Court will decline to rely on

11   this out-of-circuit case because it is in direct conflict with the Ninth Circuit's holding in

12   *Paciulan*, which is binding here.  *See Hart v. Massanari*, 266 F.3d 1155, 1170 (9th Cir.

13   2001) ("[b]inding authority must be followed unless and until overruled by a body

14   competent to do so").

15          Because Plaintiff does not plead a protectable property interest, its due process

16   claim fails.  The Court therefore GRANTS Defendants' motion to dismiss Count Four.[14]

17   **VI.    Leave to Amend**

18          Plaintiff requests leave to amend.  ECF No. 30 at 11-12.  Defendants argue leave to

19   amend should be denied as futile.  ECF No. 31 at 11.  Where a motion to dismiss is

_____

[14] Plaintiff argues at the beginning of its motion that this case "presents several novel legal theories," and that "Rule 12(b)(6) dismissals are especially disfavored in cases where the complaint sets forth a novel legal theory that can best be assessed after factual development."  ECF No. 30 at 9-11 (quoting *McGary v. City of Portland*, 386 F.3d 1259, 1270 (9th Cir. 2004).  However, *Berch* is on all fours with almost all of Plaintiff's legal theories, and Plaintiff's long history of bringing constitutional challenges to bar admission rules, *see supra* note 6, cuts against any argument that the theories are novel. Plaintiff's only potentially novel argument is the application of *Students for Fair Admission* to the issues, but as the Court discussed above, that seminal case is of no help to Plaintiff here.  Therefore, the Court does not give much weight to the purported "novelty" of the claims here, especially given that Plaintiff plainly fails to state any claim for relief.

granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).

Here, the grounds for dismissal are strictly legal: the challenged admission rule is constitutional under all of Plaintiff's legal theories. No additional factual allegations could possibly cure the deficiencies in Plaintiff's legal theories. Therefore, the Court will not grant Plaintiff leave to amend the claims which have been dismissed in this Order. *See Ofir v. Transamerica Premier Life Ins. Co.*, 781 F. App'x 617, 619 (9th Cir. 2019) ("[a]mendment to add further factual allegations would have been futile given the legal deficiencies in Ofir's theories of relief") (citing *Hoang v. Bank of Am., N.A.*, 910 F.3d 1096, 1103 (9th Cir. 2018); *see also Allmaras v. Univ. Mech. & Eng'g Contractors, Inc.*, --- F. Supp. 3d ----, 2024 WL 4860804, at *12 (S.D. Cal. Nov. 20, 2024) (denying leave to amend because grounds for dismissal were strictly legal and no additional facts would change this conclusion).

However, Plaintiff previously requested leave to amend its Complaint to add new claims, *see* ECF No. 25-1, which the Court denied pending the outcome of the motion to dismiss, *see* ECF No. 29 at 7 ("[t]he Court will revisit leave to amend upon deciding Defendants' pending motion to dismiss"). To the extent Plaintiff still wishes to bring claims not addressed in this Order, the Court will allow the Plaintiff to file a new motion for leave to amend. In that motion, the Court directs Plaintiff to address why the Court will have jurisdiction over the claims in light of the dismissal of the federal constitutional claims.

//

//

1

**CONCLUSION**

2          For the above reasons, the Court GRANTS Defendant's motion to dismiss with

3     limited leave to file a motion for leave to amend, as outlined in Section VI of the

4     "Discussion."  If Plaintiff opts to file a motion for leave to amend, it must do so within 21

5     days of this Order.[15]

6          **IT IS SO ORDERED.**

7

8     Dated:  March 19, 2025

9                                                                      Hon. Gonzalo P. Curiel

10                                                                     United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22  _____

23  [15] The Court acknowledges that, in opposing Plaintiff's late motion for leave to file supplemental
     authorities and request for judicial notice, Defendants ask the Court to impose sanctions on Plaintiff's
24   counsel and otherwise relieve Defendants' counsel from responding to any further filings while he is on
     vacation.  ECF No. 40 at 2-4.  If Defendants' counsel would like to proceed with this request for
25   sanctions, he should file a full motion for sanctions, and the Court will subsequently issue a scheduling
     order on the matter.  The further request to relieve counsel from responding to further filings is rendered
26   moot by this Order.

27                                                31

28                                                                                    24-cv-02175-PHX-GPC